UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DANE ALLEN ERIC ISCARO,

        Plaintiff,                       Case No. 2:10-cv-241

v.                                        Honorable R. Allan Edgar

UNKNOWN PARTY #1, et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* without payment of an initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Dane Allen Eric Iscaro, an inmate at the Chippewa Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Inspector Unknown Party #1, MDOC Director Patricia Caruso, Property Corrections Officer Scott Smith, Resident Unit Officer Unknown Bernhardt, Assistant Resident Unit Supervisor Unknown Thomas, Resident Unit Manager T. Swift, Warden Gregory McQuiggin, Grievance Coordinator M. McClean, Assistant Deputy Warden Unknown Andrzejak, Resident Unit Officer Unknown Hall, Inspector Ian McDonald, Resident Unit Manager D. Mansfield, Resident Unit Officer Unknown Koben, Resident Unit Officer N. Smith, Resident Unit Officer Unknown Headley, Resident Unit Officer Unknown Reed, Assistant Deputy Warden J. Nadeau, Deputy Warden Unknown Boynton, Resident Unit Manager G. Lemon, Barbara Storey, Lieutenant Unknown Altoft, Health Care Corrections Officer Unknown Party #2, Assistant Deputy Warden Unknown Party #3, Hearing Investigator Unknown Party #4, Britney Danielle Wittebort, Inspector Unknown Party #5, Mail Room Worker Colleen Myotte, J. Grenier, Warden Jeff Woods, Administrative Assistant Michael Sibbald, Hearing Officer Unknown Theut, Hearing Officer Unknown O'Brien, MDOC Deputy Director Dennis Straub, Regional Prison Administrator Unknown Sherry, and 39th Circuit Court Judge Rosemarie Aquilina.

In his complaint, Plaintiff alleges that from 2004 until 2009, a private individual named Britney Wittebort defamed Plaintiff to prison officials and Tyra McClendon. Plaintiff alleges that on January 20, 2009, Defendant McDonald opened and read his outgoing mail, which was addressed to Tyra McClendon. Following that, Plaintiff was taken to the control center and given a misconduct for threatening behavior for making threatening statements in the letter. Plaintiff states that the letter was addressed to a private individual and that the contents of his letter were merely

a form of venting. Plaintiff denies that the letter was a threat and states that it was not for a public audience. Plaintiff's misconduct ticket was reviewed and approved by Sergeant Marre. Plaintiff was found guilty following a hearing before Defendant Theut. Plaintiff filed a grievance regarding this incident.

Plaintiff claims that between November 3, 2008, and February 24, 2009, Defendants McDonald and other unknown parties from the mail room repeatedly lost, stole or destroyed outgoing mail addressed to Plaintiff's family, friends, inmate friends and legal / spiritual advisors without providing Plaintiff with any due process. Plaintiff asserts that this was the result of Wittebort's false allegations against Plaintiff. Plaintiff states that as a result of Wittebort's interference, Plaintiff's relationship with McClendon deteriorated from friend, spiritual advisor, and fiancée, to virtually nothing at all. Plaintiff also claims that, during this time, Defendants Bernhardt, Hall, S. Smith, N. Smith, Koben, Headley and Reed issued a multitude of frivolous, exaggerated, and / or fictitious minor and major misconduct tickets on him. Plaintiff states that the misconduct tickets were issued to discourage Plaintiff from using the telephone or filing grievances. However, Plaintiff fails to specify the dates of the misconduct tickets, the nature of the tickets, or the basis for his conclusion that they were issued for the purpose of discouraging Plaintiff to use the telephone or to file grievances. In October of 2009, Plaintiff's outgoing mail began to come up missing. Plaintiff filed a grievance against the mail room and John Doe Inspector at KCF, which was responded to by Defendant Myotte and reviewed by Defendants Grenier and Woods.

On November 4, 2008, Plaintiff reported to Defendant S. Smith for inspection and inventory of his property. Defendant S. Smith confiscated numerous items, including Plaintiff's guitar, a headphone amplifier, personal papers, legal work, and other religious/philosophical

documents. It was subsequently determined that, other than the guitar and legal work, the material could not be retained. Plaintiff agreed to have the property sent home and staff agreed to store Plaintiff's guitar, stating that it was not permitted at the facility. Plaintiff asserts that this conduct violated URF O.P. 04.07.112D, pg. 1, which states that prisoners who are transferred into KTF and Pike Unit or URF will be allowed to keep electric guitars and keyboards which are already in their possession, but that the playing of these instruments must comply with facility rules. Plaintiff claims that his property was seized in an effort to discourage Plaintiff from seeking redress of grievances. Plaintiff also claims that Defendant Smith took a book that Plaintiff was writing because it contained formulae for making various drugs. However, Plaintiff asserts that MDOC policy does not specifically state that such materials constitute a misconduct violation. Plaintiff states that he was deprived of the materials without due process. In addition, Plaintiff states that he was placed on a permanent visitor restriction. The misconduct was reviewed by Sergeant Mekay, and Plaintiff was found guilty by Hearing Officer Robbins. Plaintiff appealed, without success.

On November 2, 2008, Plaintiff was found guilty of threatening behavior following a hearing. On November 10, 2008, Plaintiff discovered that his access code for use with the phone had been deactivated without his knowledge. On November 12, 2008, Defendant Swift notified Plaintiff that Defendant McDonald had deactivated the code and on November 18, 2008, Defendant Swift alleged that Plaintiff had given another prisoner authorization to make calls on his behalf. Defendant Swift ordered Plaintiff's phone privileges to be restricted for 180 days. Plaintiff states that the initial restriction, before the November 18, 2008 hearing, violated his due process rights. Plaintiff also asserts that the restrictions further interfered with his relationship with McClendon. On November 30, 2008, Plaintiff went to URF medical for a groin injury, during which the health

care officer told Plaintiff that everybody at URF had received an email regarding Plaintiff's conduct at URF. The health care officer told Plaintiff that he would be watched closely and that he would not fare well at URF.

On January 20, 2009, Plaintiff was placed in segregation and Defendant Bernhardt was assigned to inventory Plaintiff's property. During the process, Defendant Bernhardt broke approximately 15 tape cases, confiscated personal papers containing lyrics and poetry authored by Plaintiff, and confiscated copies of medical records and personal correspondence. Defendant Bernhardt falsely asserted that some of the documents contained information on substance abuse, despite the fact that they were merely a diagram of the elements found in vinegar and other substances. On March 23, 2009, Plaintiff filed a grievance regarding Defendant Mansfield's theft of a book possessed by Plaintiff. The grievance was reviewed by Defendants Lemon and Nadeau. From November 3, 2008, until the present, various employees at URF and KCF have stolen, destroyed or otherwise deprived Plaintiff of incoming letters from Dolores Iscaro. Plaintiff's grievance regarding this issue was responded to by Defendant Mayotte and reviewed by Defendants Grenier and Woods. On November 4, 2008, Defendant S. Smith confiscated more than 25 newsletters regarding the "Five Percenter" faith, asserting that the group was a security threat group (STG). Defendant S. Smith wrote a Notice of Intent (NOI) on the publications. Plaintiff was subsequently found guilty of possessing contraband and Defendant Bernhardt forwarded the newsletters to URF STG Coordinator John Doe. Plaintiff was never given an opportunity to send the items home, nor was Plaintiff classified as an STG member. Defendant Bernhardt subsequently began to search Plaintiff's cell more frequently and, when Plaintiff asked him about it, Defendant Bernhardt stated, "What is your black ass going to do about it, if it's not in the log it never happened

and I was never here just like I'm not here now." During one search, Defendant Bernhardt took a Nation of Islam study packet and claimed that the material was STG related. Plaintiff was not offered an opportunity to send the material home, nor was he classified as an STG member. Plaintiff filed three separate grievances on this matter, which were responded to by Defendants Thomas and McClean and reviewed by Defendants Swift, Andrzejak, and McQuiggin. On January 29, 2009, Plaintiff wrote a grievance on Defendants Swift and McDonald regarding the phone restriction, which was responded to by Defendant Mansfield and reviewed by Defendants Andrzejak and McQuiggin.

On May 30, 2009, Defendant Storey denied Plaintiff a clergy visit from Dolores Iscaro, despite the fact that Defendant Caruso had issued a memorandum on February 27, 2009, which expressly permitted Plaintiff to have visits from clergy, attorneys and ombudsmen. Plaintiff asserts that Iscaro met the definition of clergy set forth in Policy Directives 05.03.150 ¶ ZZ and 05.03.140 ¶ C. On June 9, 2009, Plaintiff wrote a grievance regarding the previous denial of clergy visits, which was responded to by Defendant Spiker and reviewed by Defendant Swift. In addition, Defendant Storey denied Plaintiff clergy visits with Dolores Iscaro in a letter dated June 17, 2009.

On October 1, 2009, Plaintiff was granted special religious meals and was transferred to KCF in order to receive the meals. On December 17, 2009, Defendant Sibbald notified Plaintiff that clergy visits with Dolores Iscaro would again be denied, but that clergy visits with Tyra McClendon were approved. Pursuant to this approval, Plaintiff arranged for a visit by McClendon the following week. After McClendon drove 400 miles to visit Plaintiff, the visit was denied. On December 30, 2009, McClendon was told that she would never be allowed a clergy visit. On January 5, 2010, Defendant Woods advised Plaintiff and McClendon that she would never be allowed clergy

visits with Plaintiff. Plaintiff asserts that he was transferred back to URF in retaliation for legal threats made by himself and clergy, which caused him to lose his religious meals.

Plaintiff claims that Defendants' conduct violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), as well as under the United States Constitution. Plaintiff seeks damages and injunctive relief.

## Discussion

    I.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2));

*see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that Plaintiff's complaint consists mainly of conclusory assertions of misconduct on the part of Defendants. As stated above, Plaintiff asserts that Defendants Bernhardt, Hall, S. Smith, N. Smith, Koben, Headley and Reed issued a multitude of frivolous, exaggerated, and / or fictitious minor and major misconduct tickets on him in an effort to discourage him from using the phone or from filing grievances. However, Plaintiff fails to allege any specific facts in support of this assertion. While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556).

Because conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983, Plaintiff's claims regarding the frivolous, exaggerated, and / or fictitious minor and major misconduct tickets issued by Defendants Bernhardt, Hall, S. Smith, N. Smith, Koben, Headley and Reed are properly dismissed. *Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555.

Plaintiff claims that Defendants imposed a visitor restriction on him based on the false accusations of a private individual. Plaintiff asserts that he was improperly found guilty of two misconduct convictions for substance abuse, which resulted in his placement on visitor restriction. Plaintiff attaches a copy of a memorandum from Defendant Caruso to Defendant Straub, stating that Plaintiff was found guilty of substance abuse (Narcotics Paraphernalia) on November 6, 2008, and again on January 26, 2009. Defendant Caruso further stated that "[t]he restriction shall not be considered for removal until at least two years from today's date [February 27, 2009] and the prisoner has been free of major misconducts for substance abuse of a non-bondable major misconduct during that time period."

Under Michigan law a prisoner is entitled to notice of a hearing, and the opportunity to present evidence and arguments. M.C.L. § 791.252. A hearing officer is not bound by state or federal evidentiary rules, but rather may consider "evidence of the type commonly relied upon by reasonably prudent persons in the conduct of their affairs." *Id.* Further, a hearing officer may deny a prisoner access to evidence that may pose a security concern if disclosed. *Id.* Plaintiff has failed to show that his constitutional rights were violated at his misconduct hearing.

Moreover, the hearing officer's conclusion that Plaintiff was guilty of the misconduct charge was supported by the record. Plaintiff concedes that one of the items seized from his cell on

November 4, 2008, was a book that he was writing which contained the formulae for making various drugs. Plaintiff merely argues that such material does not violate prison policy. Plaintiff was found in possession of similar material a second time on January 20, 2009, while Defendant Bernhardt was packing up Plaintiff's property. Plaintiff concedes that he possessed the material and merely disagrees with the conclusion that such material constitutes "drug paraphernalia." In this case, it appears that Plaintiff merely disagrees with the Hearing Officer's conclusion. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980).

Plaintiff also asserts that he was deprived of certain property, including a headphone amplifier, personal papers, certain religious / philosophical documents, approximately 15 tape cases, confiscated copies of medical records, and personal correspondence without being given a hearing. Plaintiff also claims that numerous "Five Percenter" newsletters and Nation of Islam materials were confiscated, and that the materials were destroyed without first giving Plaintiff an opportunity to send the materials home. Plaintiff's due process claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is

premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Nov. 15, 2004). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's claims regarding the deprivation of his property will be dismissed.

Plaintiff alleges that his First Amendment and RLUIPA rights were violated when he was denied clergy visits by Dolores Iscaro and Tyra McClendon. While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly

retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) ("sincerely held religious beliefs require accommodation by prison officials").

While inmates retain First Amendment rights to the free exercise of religion, prison officials may impinge on these constitutional rights if the regulation "is reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. are there alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational"). If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id.*

Plaintiff does not allege that he was denied visitation with all clergy, but merely states that he was told that he would not be allowed to have clergy visits with Dolores Iscaro and Tyra McClendon. As noted above, Plaintiff admits that he attempted to send mail to McClendon which contained threatening statements, although Plaintiff claims that he was only "venting," and that he was not serious about the threats. Plaintiff also admits that his relationship with McClendon was more than just parishioner / clergy. Instead, Plaintiff states that prior to Wittebort's interference, his relationship with McClendon was that of friend, spiritual advisor and fiancée. However, Plaintiff asserts that after Wittebort's false allegations, his relationship with McClendon deteriorated to the point of nothing. In addition, it appears that Iscaro, who shares Plaintiff's surname, is related to Plaintiff and that listing her as a clergy member was merely a way to obtain visitation with her. It

does not appear as if the denial of clergy visits with Iscaro or McClendon infringed upon Plaintiff's sincerely held religious practice or belief. Plaintiff therefore has not alleged how his First Amendment right to the free exercise of religion was impaired by the denial of visitation with Iscaro and McClendon. There is a valid, rational connection between preventing Plaintiff's visitation with an individual toward whom Plaintiff had made threatening statements and protecting a private citizen. Consequently, the first *Turner* factor is satisfied. The other three *Turner* factors also support the ban. Most importantly, Plaintiff has not even alleged that visitation with Iscaro and McClendon was necessary for or part of the practice of his religion. Accordingly, Plaintiff fails to state a claim for a violation of his First Amendment and RLUIPA rights.

As set forth above, Plaintiff claims that he was transferred to KCF on October 1, 2009, in order to receive a special religious diet. Plaintiff claims that he was transferred back to URF in retaliation for "legal threats" made by himself and clergy. However, Plaintiff fails to allege the nature of the "legal threats" with any specificity. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In this case, Plaintiff fails to specify the nature of any "legal threats" made by himself or his clergy. Nor does Plaintiff specify the date that such "threats" were made or the date of his transfer back to URF. Although temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court concludes that Plaintiff's conclusory and ambiguous statement is not "significant enough" to show the existence of a retaliatory motive.

Finally, the court notes that liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Caruso, McQuiggin, McClean, Andrzejak, Nadeau, Boynton, Lemon, Storey, John Doe #2 Corrections Officer Health Care, John Doe #3 Assistant Deputy Warden, John Doe #4 Hearing Investigator, Altoft, Myotte,

Grenier, Woods, Sibbald, Straub, and Sherry were personally involved in the activity which forms the basis of his claims. The only roles that Defendants Caruso, McQuiggin, McClean, Andrzejak, Nadeau, Boynton, Lemon, Storey, John Doe #2 Corrections Officer Health Care, John Doe #3 Assistant Deputy Warden, John Doe #4 Hearing Investigator, Altoft, Myotte, Grenier, Woods, Sibbald, Straub, and Sherry had in this action involve the denial of administrative grievances or the failure to act. Defendants Caruso, McQuiggin, McClean, Andrzejak, Nadeau, Boynton, Lemon, Storey, John Doe #2 Corrections Officer Health Care, John Doe #3 Assistant Deputy Warden, John Doe #4 Hearing Investigator, Altoft, Myotte, Grenier, Woods, Sibbald, Straub, and Sherry cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Caruso, McQuiggin, McClean, Andrzejak, Nadeau, Boynton, Lemon, Storey, John Doe #2 Corrections Officer Health Care, John Doe #3 Assistant Deputy Warden, John Doe #4 Hearing Investigator, Altoft, Myotte, Grenier, Woods, Sibbald, Straub, and Sherry are properly dismissed for lack of personal involvement.

       The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity in relation to actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); MICH. COMP. LAWS §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same). Plaintiff's claims

against Defendants Theut and O'Brien fail because they are absolutely immune under the circumstances of this case.

Plaintiff names State Court Judge Rosemarie Aquilina as a Defendant in this case. Generally, a judge is absolutely immune from a suit for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of person consequences to himself.") (internal quotations omitted); *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Absolute judicial immunity may be overcome in only two instances. First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity. *Mireles*, 502 U.S. at 11. Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Id.* at 12.

Plaintiff's claim against Judge Aquilina is entirely conclusory and fails to implicate either of the exceptions to judicial immunity. Accordingly, Judge Aquilina is absolutely immune from liability. 28 U.S.C. § 1915(e)(2)(B)(iii).

Finally, with regard to Defendant Wittebort, Plaintiff has failed to show that she acted under color of state law. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937

(1982); *Street*, 102 F.3d at 814.  There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself."  *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  Plaintiff has not presented any allegations by which Defendant Wittebort's conduct could be fairly attributed to the State.  Accordingly, he fails to state a § 1983 claim against Defendant Wittebort.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   10/11/2011                              */s/ R. Allan Edgar*
                                                 R. Allan Edgar
                                                 United States District Judge